STATE of Maine

v.

Frederick L. THURLOW.

Supreme Judicial Court of Maine.

Argued March 18, 1980.
Decided June 3, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, for plaintiff.

Glassman, Beagle & Ridge by C. Alan Beagle, Portland (orally), for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS and ROBERTS, JJ.

GODFREY, Justice.

Defendant was convicted of burglary, Class C, 17–A M.R.S.A. § 401, after a jury trial in the Superior Court, Cumberland County. On appeal, defendant asserts that the presiding justice should have granted a mistrial because of the prosecutor's violation of the automatic discovery rule, M.R. Crim.P. 16(a). The state contends that the violation was harmless. Because we consider the violation to have been prejudicial, we sustain defendant's appeal and remand the case for a new trial.

At about 1:15 a. m. on November 27, 1978, defendant and his friend, Victor Mitchell, were arrested in Leroy's Place, a Portland bar, where they were after hours and without permission. The only contested issue at trial was whether defendant had entered the bar with the intent to commit theft. The state sought to prove that defendant and Mitchell had entered in order to steal money, while the defense contended that defendant had come to the bar to retrieve his drunken friend after Mitchell telephoned him that he had broken in through the rear door to drink some beer.

The state's case consisted mainly of the testimony of police officers Snow and Robinson. Snow testified as follows: that he was on solo patrol when he saw some movement in Leroy's; that, because the front door was closed, he drove to the rear, where he saw an open door; that, as he went into the entryway, a firedoor on his left burst open, having been kicked by defendant. Snow started to chase defendant and Mitchell into the bar, stopped, radioed for help, then went back to his cruiser to turn off the ignition. Seconds later, Officer Robinson entered the bar with defendant, who was then arrested. Mitchell was later found in a crawl space over the ceiling.

Robinson testified as follows: that he heard Snow's radio call while patrolling 250 yards away from Leroy's; that upon arrival he saw defendant standing, not running or moving, in front of the bar; that when he asked defendant what he was doing there, defendant answered that the alarm had been sounding and the officer inside had asked him to watch the front while the officer went around to the back. Robinson took defendant inside to verify the story with Snow, who contradicted defendant's story.

Defendant presented three witnesses on his behalf who testified as follows: Victor Mitchell admitted that as of November, 1978, he had been an alcoholic for two years and had been living at defendant's apartment off and on between drinking bouts. The evening before his arrest, after having a few beers at Leroy's, Mitchell borrowed defendant's car. Defendant wrote his telephone number on a card and gave it to Mitchell in case Mitchell became too drunk to drive the car home safely. Mitchell spent the next three or four hours drinking beer and wine at various places in Portland before deciding to have a few final beers at Leroy's. As was his custom, Mitchell drove to the rear, parked, and knocked on the door to be let in. The owner of Leroy's confirmed that regular customers, such as Mitchell, would knock on the locked rear door and be let in by the bartender.

But on this occasion Mitchell was not let in because the bar had already closed. He became angry, broke open the door and

went in to get a drink. After taking a beer from the cooler, Mitchell saw defendant's card and realized he was too drunk to drive to defendant's apartment, which he said was about a mile away. Mitchell telephoned defendant's sister and told her that he was at Leroy's, drunk; she drove over to defendant's apartment (which did not have a telephone), honked her horn, and told defendant of the call. Defendant told the woman he was living with that he had to go pick up his car, and rode to Leroy's with his sister. Defendant's sister dropped him off near Leroy's, then drove away. Meanwhile, Mitchell had unlocked the front door, sat down and drunk two more beers from the cooler. Defendant walked in and said, "Did you break in?"; when Mitchell replied, "I guess so", defendant said, "We better get out of here before we get in trouble." But as they tried to leave through the rear door, they encountered officer Snow. Mitchell subsequently pleaded guilty to burglary for breaking into Leroy's and taking the three beers.

■ Soon after defendant's arrest the district attorney's office, pursuant to its "open-file policy", turned over without request all non-work-product materials in its file on the case, including only one police report, by officer Snow, which gave no indication of the existence of any statements by defendant to the police. Ten days before trial defense counsel made a "Request for Discovery", M.R.Crim.P. 16(b), in which he requested, among other things, "any and all materials which the attorney for the state is required to produce pursuant to Rule 16(a) of the Maine Rules of Criminal Procedure." When no additional materials were provided, defense counsel made a motion for discovery, M.R.Crim.P. 16(c). At a hearing on the motion, defense counsel stated that he had received only one police report and asked if that was the only police report or witness's statement in the case. The assistant district attorney replied that there was no other report.

At trial, during the state's case-in-chief, the prosecutor elicited from Officer Robin-son evidence of defendant's false statement that he was standing in front of the bar at officer Snow's request. Because of the apparent absence of a police report by Robinson, defense counsel immediately tried to expose Robinson's testimony as a recent fabrication. The relevant cross-examination proceeded as follows:

Q. Mr. Robinson, are you familiar with normal police procedures?

A. Yes, sir, I am.

Q. And when you participate in an arrest or have a statement from individuals that perhaps indicate that they were involved in some type of incident, is it normal procedure to prepare a report?

A. Yes, sir, it is.

Q. Did you prepare a report in this case?

A. Yes, sir, I did.

Q. Do you have a copy of that report with you?

A. Yes, sir. I have one with me.

Q. May I see it, please?

A. Yes, sir. Here you are, sir (Handing).

[Defense counsel]: May I approach the bench, please?

During the side-bar discussion, the prosecutor disclosed that she had not known of the existence of Robinson's report until just before trial that day and had not informed defense counsel of this newly discovered matter because she assumed counsel had it already. Defense counsel subsequently moved for a mistrial on the grounds that the prosecutor was aware of the automatically discoverable evidence before trial and that the nondisclosed statement was critical evidence as to intent. The presiding justice denied the motion, citing lack of prejudice to defendant. During her closing argument to the jury, the prosecutor referred to defendant's statement as "very critical" circumstantial evidence of criminal intent.

Maine's "automatic discovery" provision, M.R.Crim.P. 16(a)(1)(A)(ii), states in pertinent part:

The attorney for the State shall furnish to the defendant within a reasonable time . . . [a] statement describing any testimony or other evidence intended to be used against the defendant which . . [r]esulted from any confession, admission, or statement made by the defendant . . . .

Also subject to "automatic discovery" is "the substance of any oral statements made by the defendant", Rule 16(a)(1)(B). On this appeal, the state, although conceding that a violation of Rule 16(a) occurred, contends that the failure of the local police department to supply Robinson's report negates any prosecutorial bad faith or negligence.

■ As we have said in a recent case, Rule 16(a) requires "a diligent inquiry of police agencies by a prosecutor as to whether such [automatically discoverable] information does exist", *State v. Flemming*, Me., 409 A.2d 220, 223 n. 2 (1979). That requirement exists even though automatic disclosure may merely tell defense counsel something he already knows or has reason to know. *State v. Bishop*, Me., 392 A.2d 20, 26 (1978). In several cases in other jurisdictions, it has been held that the prosecution is responsible for failure of the police department to produce a defendant's statement. *E. g., Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964); *People v. Young*, 59 Ill.App.3d 254, 257, 16 Ill.Dec. 569, 375 N.E.2d 442, 444 (1978); *Reid v. State*, 267 Ind. 555, 564, 372 N.E.2d 1149, 1154 (1978) (dictum).

Officer Robinson's report did not reach the prosecutor until the morning of trial. Once she received the report, the prosecutor was under a continuing, affirmative duty to make disclosure of the existence of the report and the substance of defendant's statement. M.R.Crim.P. 16(a)(2). In the circumstances, she had a duty to do so immediately. The tardiness of the police department did not excuse the prosecution's subsequent non-compliance with Rule 16, which was especially egregious in this case for two

reasons: First, defense counsel had made repeated, affirmative efforts pursuant to Rule 16 to assure himself that the only police report or statement to be used against his client was that of Officer Snow. Counsel had been expressly assured in court by another assistant district attorney that there were no more automatically discoverable materials in existence. The trial prosecutor's non-disclosure combined with her colleague's positive representation of full disclosure thus lured defense counsel into relying on a mistaken assumption of fact. Second, the nondisclosed statement was crucial evidence of defendant's intent, as the prosecutor made clear in her closing argument. The importance to the defense of Robinson's report could not have escaped the prosecutor's attention, *see United States v. Keogh*, 391 F.2d 138, 146–48 (2d Cir. 1968), and the continuing, automatic nature of the provisions of Rule 16(a) did not permit the prosecutor to assume, without inquiry, that defense counsel was aware of the report and the statement it contained.

■ In this case, the result of the state's violation of Rule 16(a) must be a new trial. We have described the underlying purposes of Rule 16(a) as enhancing the quality of the pretrial preparation of both the prosecution and defense and diminishing the element of unfair surprise at trial, all to the end of making the result of criminal trials depend on the merits of the case rather than on the demerits of lawyer performance on one side or the other. *State v. Mason*, Me., 408 A.2d 1269, 1273 (1979); *State v. Bishop, supra* at 26. As in *Mason*, it is clear from the record that defense counsel was unfairly surprised by the defendant's statement and by the existence of Robinson's written report. Given that the most critical issue in the case was the question of defendant's criminal intent or lack thereof, the nondisclosure of Robinson's report was prejudicial, not harmless. *See United States v. Manetta*, 551 F.2d 1352, 1355–56 (5th Cir. 1977); *People v. Shegog*, 37 Ill.

App.3d 615, 617–18, 346 N.E.2d 208, 210–12 (1976).

We cannot accept the state's contention on appeal that reversal and remand for a new trial would "accomplish nothing". The conviction here was obtained after a violation of Rule 16(a) that had serious detrimental impact on the defense. Whatever may be the outcome of this case on retrial, the integrity of the administration of criminal justice in this state cannot be maintained if such a conviction is permitted to stand.

The entry is:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.