STATE of Maine

v.

Robert J. BARDEN.

Supreme Judicial Court of Maine.

Argued March 7, 1980.

Decided July 17, 1981.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., (orally), Richard Currier, Law Student Intern, (orally), Portland, for plaintiff.

Hewes, Culley, Feehan & Beals, George W. Beals, (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and ROBERTS, JJ.

NICHOLS, Justice.

The Defendant, Robert J. Barden, appeals from a judgment of conviction entered September 25, 1979, in Superior Court, Cumberland County, upon a jury's verdict finding him guilty of robbery while to his knowledge an accomplice was armed with a dangerous weapon (Class A; 17–A M.R.S.A. § 651(1)(E)). He raises three issues here:

(1) Whether the presiding justice erred in excluding the alleged accomplice's out-of-court statement.

(2) Whether the presiding justice's decision to allow the prosecution to use at trial evidence which had been withheld from the Defendant in violation of court-ordered discovery, denied the Defendant a fair trial.

(3) Whether the presiding justice erred in refusing to instruct the jury on the lesser included offense of robbery.

We affirm the judgment of the Superior Court.

The facts may be briefly stated. The victim of the robbery was Carleton G. Foster, of Poland Springs. On December 14, 1978, after attending a Christmas party in Portland, Foster went to the Club Night Life, an all-night bar in Portland. While "table-hopping" there, he engaged in a conversation with the Defendant and the Defendant's friend, Michael Grant. He had not previously met these two men. After a time, Foster, the Defendant and Grant left the bar together. Foster got into the back seat of the Defendant's automobile; the Defendant drove and Grant sat in the front passenger seat. Unknown to Foster, the Defendant was carrying a loaded .357 magnum revolver in a holster on his hip under a large overcoat.

Foster testified that he accompanied the two men because they had offered to take him to a better all-night club. He said he dozed periodically and had no accurate recollection of how long they drove before they stopped in a remote area (of Falmouth). Someone switched on the dome light, and Grant turned and pointed a gun at him. The Defendant warned Grant not to shoot, Foster testified, but told Foster to give them everything he had. After Foster handed over his wallet, the Defendant reached over the back seat and took Foster's checkbook and keys from his coat pocket. They then let him out of the automobile and told him to start walking. As they drove away, he heard two gun shots. Within minutes he was picked up on the road by a Falmouth police officer.

Foster's testimony thus given at trial was entirely consistent with a detailed written statement he had given the Falmouth police four days after the incident. On cross-examination, however, defense counsel sought to impeach Foster with a prior written statement he had made at the Falmouth police station during the early morning of December 15, 1978, only a few hours after the incident.[1] In several respects the De-

---

1. In pertinent part, the December 15 statement read:

I was approached by two persons inside .... They talked me into going with them to find a real nice broad. The big guy was driving, I was in the back seat, and the guy with the pistol was in the passenger's side although at this point, I did not know he had a gun. I have no accurate concept in how long we were driving but we ended up in the woods somewhere (later found to be Hardy Road, Falmouth). They stopped the car. The passenger (small man) turned around and pointed a gun at my head. He said something to the effect that "you are going to give us everything that you have or we are going to kill you". It appeared that he was desirous (sic) to kill me to I cooperated fully.

I gave them my wallet and checkbook and possible (sic) some bills I had in my pockets. ...

cember 15 statement conflicted with Foster's testimony at trial. The major differences were (a) that the three men left the bar together "to find a real nice broad" (rather than to find a better bar); (b) that it was "the passenger" (rather than the Defendant) who told the victim to hand over everything he had and (c) that after the victim handed over his wallet, checkbook and cash, "both men got back in the car." (In the subsequent statement and at trial, Foster insisted that the entire incident took place inside the automobile).

The Defendant testified in his own defense. He denied participating in the robbery. He said that when the three left the bar, he drove to Dunkin Donuts, and finding no women there, he decided to drive to a friend's house on Auburn Terrace, in Portland. He said that Foster did not doze, but instead engaged in a heated argument with Grant. The argument distracted him to such a degree that he missed the Auburn Terrace turn off Washington Avenue, missed another right turn which he meant to take to correct the initial mistake, turned left instead and ended up driving out the Blackstrap Road toward Falmouth. When he realized where he was going, he decided to turn around at the dump in Falmouth. As they drove along, Grant suddenly pulled the Defendant's gun from under the passenger seat and pointed it at Foster. The Defendant said that he stopped the car when he saw the gun, and that Grant immediately pulled Foster out of the car. When the Defendant heard Grant threaten to blow Foster's head off, he got out of the

> I pleaded with them not to kill me. At that point, the smaller person stated that he should kill me. However, the large man pointed out which way to walk on the road. Both men got back in the car and drove away. After they were some distance away from me, I heard two (2) shots fired.
> I started walking and shortly afterwards, I met a police car and was picked up.

2. The Defendant and Grant were arrested within minutes of the alleged robbery. The Defendant had more than $300 in cash in his wallet. A subsequent search of the automobile, pursuant to a search warrant, disclosed Foster's checkbook in the automobile.

car to stop Grant from hurting Foster. He convinced Grant to leave, and they drove off, leaving Foster on the road. He denied any knowledge that a robbery took place during the incident.[2]

I

The Defendant contends that the presiding justice committed reversible error in excluding an out-of-court statement of Michael Grant, his companion at the time of this incident. The factual difference between the victim's trial testimony, his December 15 written statement and the Defendant's version of the events are central to the Defendant's first point on appeal.

At trial the Defendant called as a witness Duane Dyer, a close friend of his for about twenty years. Mr. Dyer testified that in January, 1979, he was in the recreation room at the Defendant's residence in Portland when Michael Grant arrived. Defense counsel inquired "did the subject of this incident ... come up in conversation?" The prosecutor objected on the grounds that this conversation and any statement made by Grant was inadmissible hearsay.

Thereupon defense counsel duly made an offer of proof that Dyer would testify that he heard the alleged accomplice, Grant, state that on the night in question he pulled the victim out of the car, put the gun up to him and severely scared him. Defense counsel contended that Grant's statement to Dyer was admissible under M.R.Evid. 804(b)(3) as a declaration against penal interest offered to exculpate the Defendant.[3]

3. M.R.Evid. 804(b)(3) provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> (3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused

Defense counsel urged that it was crucial to his client's defense to present evidence that the incident with the gun and the robbery all occurred outside the automobile and before the Defendant intervened. As an offer of proof on the matter of corroborating circumstances, defense counsel claimed that Foster's December 15 written statement corroborated Grant's statement that the incident with the gun occurred outside the automobile. Although the Defendant had not yet testified, defense counsel told the Court that the Defendant was "going to testify that as soon as the gun was pulled out he hit the brakes, and while [Foster and Grant] were arguing, Michael Grant pulled [Foster] out of the car and robbed him."

The State rejoined that M.R.Evid. 804(b)(3) could not be invoked because Grant's statement did not exculpate the Defendant. The State argued that in any event there were insufficient corroborating circumstances to justify admitting the hearsay statement under this exception to the hearsay rule.

The court excluded the statement, specifically finding that:

[T]he issue imposed by this question or the relevance of this question relates to the fact that it took place outside rather than the fact that Michael Grant was the assailant which is in effect admitted by everyone. So, the corroborative circumstances that the court must look to are as to whether it was corroborated that it did in fact take place outside of the car. 804(b)(3) says that it's to be admitted only if the corroborating circumstances clearly indicate the truthworthiness [sic] of this statement. The court is not satisfied that the corroborating circumstances in this case as they relate to the location of the assault as opposed to the identity of the assailant clearly indicate that that statement was trustworthy, and hence, the court would sustain the objection and preclude you from asking that question.

■■■ The determination of the admissibility of hearsay under M.R.Evid. 804(b)(3) is left to the sound discretion of the trial court. *State v. Holt,* Me., 391 A.2d 822, 825 (1978); M.R.Evid. 104(a). The standard for appellate review of a decision to exclude a hearsay statement under this rule is whether the trial court abused its discretion. *Id.; United States v. Metz,* 608 F.2d 147, 156 (5th Cir. 1979); *cert. denied,* —— U.S. ——, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980); *U. S. v. Satterfield,* 572 F.2d 687, 690 (9th Cir.) *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978).

■■■ Our Court had occasion to discuss in depth the operation of M.R.Evid. 804(b)(3) in *State v. Smith,* Me., 415 A.2d 553 (1980). There we observed that:

[T]he rule thus sets forth three requirements for an accused who offers an out-of-court statement exculpatory of himself: (1) the declarant must be unavailable as a witness; (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in her position would not have made the statement unless she believed it to be true; and (3) the statement must be corroborated by circumstances that "clearly" indicate its trustworthiness.

*Id.* at 559.

In the case now before us, as in *Smith,* the first of these requirements was readily met. Grant became unavailable as a witness under the provisions of M.R.Evid. 804(a)(1), when he invoked his constitutional privilege against self-incrimination. *See also State v. McDonough,* Me., 350 A.2d 556, 561 (1976); *State v. O'Clair,* Me., 292 A.2d 186, 195 (1972).

As to the second of the three requirements, we conclude that the offered testimony was sufficiently inculpatory of the declarant Grant "that a reasonable man in his position would not have made the statement unless he believed it to be true." Al-

is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception.
This rule is very similar, but not identical, to its federal counterpart.

though Grant's statement did not require the conclusion that he alone committed the alleged offense or that the Defendant did not participate, the fact that the offered testimony was not a categorical confession to the alleged robbery did not take Grant's statement out of this hearsay exception. This exception is not limited to an unequivocal confession to the crime charged against the accused. It was enough that the statement could have been used against Grant at a trial for his participation in the incident, and that is was offered in an attempt to exculpate the accused. *See, United States v. Satterfield, supra* at 691; *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978); *United States v. Bagley*, 537 F.2d 162, 165 (5th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977); *United States v. Barrett*, 539 F.2d 244, 251–252 (1st Cir. 1976).[4]

We note here the irrelevance of the fact that Grant made the statement to a friend and might have thought it highly unlikely at the time that it would ever be used against him. To whom the statement was made goes to the third requirement of corroboration, involving the question of trustworthiness as shown by the declarant's motive to falsify, if any, and not to whether the statement itself was against the declarant's penal interest. *See United States v. Barrett, supra* at 251–252; Note, *supra*, B.U.L.Rev. at 159–165.

The need for the third requirement of corroboration stems from the declarant's unavailability. Satisfaction of the second requirement is the first step toward insuring the trustworthiness of the out-of-court statement. The assumption is that a person would not ordinarily fabricate a statement which could subject him to criminal prosecution and incarceration. Nonetheless, the inherent trustworthiness of a statement against penal interest was not deemed by the rule makers to be a reliable substitute for cross-examination. Thus, the requirement of clear corroboration was added;

and, as we noted in *State v. Smith, supra*, courts have consistently "construed the corroboration requirement to be a significant one, going beyond minimal corroboration." *Id.* at 560.

Factors relevant to gauging trustworthiness in this context include (1) the time of the declaration and the party to whom it was made; (2) the existence of corroborating evidence in the case; (3) whether the declaration is inherently inconsistent with the accused's guilt; and (4) whether at the time of the incriminating statement the declarant had any probable motive to falsify. (citations omitted). *Id.*

In the case before us the time of the declaration (within a month of the incident) and the friendly relationship between the declarant and his listener do provide indications of trustworthiness. We have heretofore observed that these considerations indicate a lack of motive to falsify. However, we find support for the presiding justice's exclusion of the offered testimony in the second and third factors listed above.

Defense counsel offered two aspects of "evidence" which he claimed corroborated Grant's statement that he pulled the victim out of the car and threatened him with a gun: the victim's December 15 statement and the Defendant's story. It was undisputed that Grant held the gun on the victim; both Foster and the Defendant testified to that fact. As the presiding justice noted, the only point in need of corroboration was the statement that the incident occurred *after they got out of the automobile.*

At best the December 15 statement is ambiguous on the question of the location of the incident.[5] However, even if that statement is read to place the incident outside the automobile, the victim later specifically contradicted the statement in a subsequent more complete written statement and in his testimony at trial. This repudiation

---

4. *See also* Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule*, 57 B.U.L.Rev. 148, 156–158 (1976). *But see State v. Haywood*, 295 N.C. 709, 249 S.E.2d 429, 437–442 (1978);

Note, *Declarations Against Penal Interest*, 15 Wake Forest L.Rev. 375, 384–385 (1979).

5. *See* note 1 *supra.*

severely lessened the strength of the corroboration.

Secondly, although defense counsel told the presiding justice that the Defendant's story would corroborate Grant's out-of-court statement, this testimony was not yet in evidence at the time he made the offer of proof. Significantly, the Defendant's actual testimony was not entirely consistent with defense counsel's representation of what it would be, in that the Defendant did not accuse Grant of having committed the robbery, but rather denied having any knowledge that a robbery occurred. Moreover, defense counsel did not press for admission of Grant's statement after the Defendant testified.

Furthermore, it is clear from the presiding justice's ruling that he did not find the offered testimony to be "inherently inconsistent with the accused's guilt." In reviewing the Superior Court's ruling for an abuse of discretion, we will not substitute our judgment for that of the Superior Court where there is room for reasonable difference. *State v. Barrett, supra* at 253. The question is not whether this Court would have made the same ruling, but whether the record supports the Superior Court's decision. On this record, we cannot say that the Superior Court abused its discretion in ruling that the corroborating circumstances offered by the Defendant failed to "clearly indicate the trustworthiness" of Grant's out-of-court statement.

## II

As the Defendant's second issue on appeal, he maintains that he is entitled to a new trial because of the State's failure to disclose before trial that it had in its possession (1) a four-page written statement made by the victim and (2) the victim's

checkbook, both in violation of our rules of discovery. These violations, he contends, hampered the preparation of his defense. The Superior Court committed reversible error, he argues, when it permitted the State to use the items at trial.

### A.

■■ Prior to filing a formal request for discovery, defense counsel received from the district attorney's office a package of materials which included the one-page written statement made by Carleton Foster to the Falmouth police on December 15, 1978.[6] Foster's three-page written statement made to the Falmouth police on December 19, 1978, was not included in the materials. Defense counsel's subsequent written request for discovery pursuant to M.R.Crim.P. 16(b) did not disclose the existence of the second statement. In June, 1979, defense counsel filed in Superior Court a motion for discovery pursuant to M.R.Crim.P. 16(c), requesting, *inter alia,* "any books, papers, documents, photographs, tangible objects, . . . which are material to the preparation of the defense or which . . . the State intends to use as evidence in chief at trial." The Superior Court granted the motion. Again, defense counsel received nothing in addition to the original package of materials.[7]

On the day of the trial, during the luncheon break following opening statements, a Falmouth police officer gave a copy of Foster's second statement to the assistant district attorney. The Defendant concedes that the State's attorney was himself unaware until this time of the existence of second statement. He makes no allegation of prosecutorial bad faith or misconduct.

Just as the trial resumed, and the State was about to call Carleton Foster to the stand, the assistant district attorney

---

6. *See* note 1, *supra.*

7. The Defendant's motion for discovery did not include a specific request for written witness statements. However, the motion was made pursuant to M.R.Crim.P. 16(c) and a pretrial hearing was had in the Superior Court on the motion. Rule 16(c) provides, *inter alia,* that upon granting a motion under that subsection,

"the court shall order the attorney for the State to permit the defendant access to . . . (B) [w]ritten or recorded statements of witnesses contained in police reports or similar matter." M.R.Crim.P. 16(c)(1)(B). For purposes of this appeal, we take the Superior Court's order for discovery to include an order to disclose written witness statements.

presented defense counsel with the second statement. Defense counsel claims he had no time to read the statement before the State commenced direct examination of Foster. As previously noted, Foster's testimony was somewhat inconsistent with the first written statement he had made. The prosecution made no use of either statement during direct examination. Defense counsel elected to postpone reading the second statement, and went ahead with his cross-examination. He used the first statement to impeach Foster.

On redirect examination, the State attempted to rehabilitate Foster's testimony through the use of the second statement. Defense counsel objected, claiming that prohibiting the use of the second statement was the appropriate sanction for the State's failure to disclose its existence pursuant to the pre-trial discovery order. The presiding justice denied the objection, ruling that since defense counsel had elected to impeach Foster with the first statement, the State was entitled under M.R.Evid. 801(d)(1)[8] to rehabilitate its witness to rebut a charge of recent fabrication.

On appeal, the Defendant maintains that the presiding justice abused his discretion in allowing the State to use the second statement in spite of the discovery violation.

The Defendant's argument is that because of the discovery violation, defense counsel did not know that the second statement was inconsistent with the first, and as a result, he was misled into using the first statement to impeach Foster's testimony. He argues that where it was the State that caused him to make a tactical mistake, the State should not have been allowed to rehabilitate Foster's testimony.

M.R.Crim.P. 16(d)[9] provides sanctions for non-compliance with the rule of discovery. The rule gives to the trial court the power to exercise its discretion in choosing an appropriate sanction, if any. When the trial court has exercised its discretion, its ruling may not be set aside absent a showing of an abuse of discretion or an error of law. *Higgins v. Higgins*, Me., 370 A.2d 670, 674 (1977). "The primary test . . . is whether . . . the ruling is in the furtherance of justice." *State v. Mason*, Me., 408 A.2d 1269, 1272 (1979).

We conclude here that there was no abuse of discretion in the presiding justice's ruling. After hearing arguments from both parties, the presiding justice concluded that the State's right to rehabilitate its witness outweighed the need to impose a sanction on the State for the discovery violation. The use of the statement was limited to rehabilitation; it was not introduced into evidence. The jury was instructed on the use of prior consistent statements for rehabilitation, and was told to consider the statement only as it related to Foster's credibility.

In *State v. Thurlow*, Me., 414 A.2d 1241, 1244 (1980) we reiterated that M.R.Crim.P. 16(a) requires a diligent inquiry of police agencies by a prosecutor as to whether automatically discoverable information does exist, and we had occasion to emphasize the continuing, affirmative nature of the prosecutor's duty to disclose. We do not retreat from the views announced in *Thurlow*. The case before us is distinguishable, however, not because of the rehabilitative nature of the evidence, but because the Defendant failed to move for a mistrial or otherwise bring to the Superior Court's attention the prosecutor's violation of Rule 16 until after he had proceeded to cross-examine and at-

---

**8.** That rule provides in pertinent part:

A prior consistent statement by the declarant whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication of improper influence or motive.

**9.** The rule provides:

If the attorney for the State fails to comply with this rule, the court on motion of the defendant or on its own motion may take appropriate action, which may include, but is not limited to, one or more of the following: requiring the attorney for the State to comply, granting the defendant additional time or a continuance, relieving the defendant from making a disclosure required by Rule 16A, prohibiting the attorney for the State from introducing specified evidence and dismissing charges with prejudice.

tempted to impeach the State's witness. Having· made his election as to trial tactics, the Defendant must live with it.

We conclude that in the case before us the presiding justice's decision to allow the State to rehabilitate its witness was an appropriate exercise of judicial discretion.

## B

■■■ Also included in the State's package of materials sent to defense counsel was a list of articles in the possession of the Falmouth Police Department. The list did not include the victim's checkbook which the police had recovered from the Defendant's car. None of the subsequent discovery procedures, including a view of the evidence at the Falmouth Police Department, revealed that the prosecution was in possession of the checkbook.

Defense counsel did not become aware of the existence of the checkbook until the district attorney brought it into the courtroom on the day of the trial. However, he did not object when the prosecutor, while examining the victim, had the checkbook marked as an exhibit and asked the victim to identify it as the one he was carrying on the night of the robbery. He did later object to its admission into evidence on the basis of the discovery violation. The State agreed not to attempt to introduce it into evidence, and made no other use of it at trial. The jury was never made aware that it had been found in the Defendant's automobile.

The Defendant's failure to object during the brief time that the checkbook was before the jury limits our review to considering whether substantial rights of the Defendant were affected. M.R.Crim.P. 52(b).

Although the checkbook was only briefly before them and was never introduced into evidence, the jury took particular notice of it. During its deliberations, the jury sent out two notes asking if they might be told where the checkbook had been found. In each case, the presiding justice sent back instructions, pointing out that the checkbook had not been introduced into evidence and warning them to disregard anything not in evidence.

Even if the jury might have speculated that the checkbook was found in the Defendant's possession, in view of the cautionary instructions, the absence of ·any prosecutorial bad faith, and the fact that the victim had already testified that his checkbook was taken, we cannot say that the unobjected to use of the checkbook as an exhibit amounted to obvious error entitling the Defendant to a new trial. *See State v. Heald*, Me., 292 A.2d 200, 202–204 (1972).

## III

The Defendant's third issue on appeal is that the presiding justice erred in refusing to instruct the jury on the lesser included offense of robbery. The issue was saved for appellate review by the submission of a written request for an instruction on robbery and by objection to the trial court's refusal to give the instruction.

■■■ An instruction on a lesser included offense need not be given unless the issue has been generated by the evidence so that there is a rational basis on which the jury can find the defendant guilty of the lesser offense. *State v. Goodall*, Me., 407 A.2d 268, 279–80 (1979); *State v. Whittemore*, Me., 390 A.2d 1046, 1047 (1978); *State v. Smith*, Me., 382 A.2d 40, 42–44 (1978); *State v. Gagnon*, Me., 379 A.2d 395, 397 (1977); 17–A M.R.S.A. § 13–A.

The Defendant contends that on the basis of the evidence, the jury could have concluded that he robbed Foster inside the automobile before Grant pulled the gun and dragged Foster outside the automobile. The record does not support this contention.

■■■ The evidence adduced at trial did not generate an instruction on robbery alone. The uncontroverted fact was that Grant threatened Foster with a firearm. Foster's testimony, if believed by the jury, could have led them to no other conclusion than that the Defendant participated in the robbery while Grant as his accomplice was armed with a firearm. On the other hand, the Defendant denied any participation in

the robbery. He testified that Grant displayed the gun before the automobile stopped, and that Grant then immediately pulled Foster from the automobile. If the jury had believed him, they would have acquitted him. No witness and none of the evidence suggested that a robbery occurred inside the automobile before the firearm was displayed.

There was no error in these instructions.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.