**STATE of Maine**

v.

**Leon CORSON, Sr.**

Supreme Judicial Court of Maine.

Argued March 8, 1990.
Decided March 29, 1990.

R. Christopher Almy, Dist. Atty., Dover–Foxcroft, and Eric Bryant (orally), Asst. Atty. Gen., Augusta, for the State.

John D. Bunker (orally), Paine, Lynch & Harris, Bangor, for defendant.

Before McKUSICK, C.J., and WATHEN, CLIFFORD, HORNBY, and COLLINS, JJ.

WATHEN, Justice.

Defendant, Leon Corson, Sr., appeals from judgments of conviction entered in Superior Court (Piscataquis County, *Smith*, *J.*) for arson (17–A M.R.S.A. § 802 (1983 and Supp.1989)) and conspiracy to commit arson (17–A M.R.S.A. § 151 (1983)). On appeal, defendant argues; (1) that the Superior Court erred in denying his motion for change of venue based on the number of persons on the panel of prospective jurors who knew him, (2) that he did not receive a fair trial because the jury was prejudiced by comments made during voir dire, (3) that the State committed a discovery violation and the Superior Court erred in denying defendant's request for a mistrial and declining to strike the evidence, and (4) that the conspiracy count of the indictment is insufficient and should have been dismissed. Finding no error, we affirm the judgments.

During jury selection, thirteen of the fifty-five members of the panel indicated that

they were acquainted with defendant, and four more indicated that they knew of him. All seventeen prospective jurors acknowledged that they might find it difficult to serve fairly and impartially, and all were excused for cause. In the presence of the entire panel, one of the seventeen jurors, later excused, expressed her belief that a prospective state's witness "is an honest man." At no time did defense counsel move for a dismissal of the jury panel for prejudice.

Defendant contends that the impaneled jury could not have been impartial because of the number of jurors who had to be excused because they knew him. Defendant argues that the trial justice abused his discretion in denying his motion for a change of venue and also argues for the first time on appeal that the jury subsequently impaneled was so tainted by the results of voir dire that the trial justice's failure to dismiss the panel was obvious error. Both of defendant's points lack merit.

We have outlined three circumstances in which we will reverse a trial court's denial of a motion for a change of venue:

1) when the publicity so taints the atmosphere surrounding the trial that it must be presumed under principles of constitutional due process that the jury was prejudiced; 2) when the defendant demonstrates actual prejudice on the part of the venire persons sufficient to require reversal as a matter of due process; or 3) when denial of the motion amounted to an abuse of discretion under state law.

State v. Johnson, 479 A.2d 1284, 1286 (Me. 1984). Defendant makes no claim of taint by pretrial publicity. Therefore, only the second and third conditions apply here. We first review a denial of a motion to change venue on the constitutional basis that the prejudice denied defendant a fair trial, and second to determine if the trial justice abused his discretion. See 1 Cluchey & Seitzinger, Maine Criminal Practice § 21.5 (1984); State v. Littlefield, 374 A.2d 590, 593 (Me.1977).

■ To establish a deprivation of constitutional due process where the pretrial publicity has not tainted the surrounding atmosphere to such an extent that a presumption of jury prejudice exists, "defendant must show actual prejudice among the venirepersons." Johnson, 479 A.2d at 1287. Although seventeen of fifty-five potential jurors acknowledged that they might find it difficult to remain impartial, we have never considered ratios as determinative. See, e.g., Littlefield, 374 A.2d at 595 (forty-seven of fifty-five prospective jurors with knowledge of the charge); Johnson, 479 A.2d at 1287 (fifteen of fifty two prospective jurors had formed an opinion of case and thirty-three had some knowledge). In the case at bar, all seventeen potentially biased jurors were excused. The trial justice also questioned the remaining prospective jurors as to whether any would have "a difficult time being a fair and impartial juror." There were no negative responses. Furthermore, defendant used no peremptory challenges or challenges for cause against any of the remaining jurors. See State v. Clark, 386 A.2d 317, 321 (Me.1978) ("strong evidence" that defendant is convinced jury is not biased where no members of final panel are challenged for cause) (quoting Beck v. Washington, 369 U.S. 541, 557–58, 82 S.Ct. 955, 964, 8 L.Ed.2d 98 (1962)). In the circumstances, defendant has failed to establish actual prejudice requiring reversal as a matter of constitutional due process and we find no abuse of discretion.

■ Defendant raises the argument, for the first time on appeal, that comments made at voir dire tainted the impaneled jury. Defendant has failed to establish, however, that the failure to dismiss the panel sua sponte was obvious error affecting "substantial rights." M.R.Crim.P. 52(b); State v. Poulin, 507 A.2d 563, 564 (Me.1986). Defendant argues that the jury was "no doubt" influenced by the fact that seventeen panel members stated that their knowledge of defendant would or might impair their impartiality. He also argues that one panel member's statement of belief in a witness's credibility compounded the taint. Defendant's arguments are not persuasive. The witness referred to by the

juror did not testify as to any matter bearing on defendant's guilt. The trial justice asked all of the remaining potential jurors whether they felt their impartiality would be impaired for "any reason whatsoever" and none responded. Under the totality of the circumstances, the trial justice did not commit obvious error by failing to dismiss the panel.

At trial, the State called David Ward as a witness. Kimberly Ward, defendant's girl friend and David's sister, had testified that defendant conspired with others to commit arson and that she assisted him in setting the fire. She testified that they planned to split up after setting the fire on the pretext of having an argument. In furtherance of the plan, defendant was to drive to David Ward's house to ask for his assistance in locating his seemingly estranged girlfriend. When called as a witness, David Ward testified that defendant visited his house and requested his assistance in driving into town to look for Kimberly. The route to town involved driving past the fire scene and Ward testified that defendant insisted on taking Ward's car rather than his own. This last detail came as a surprise to defense counsel and because he considered it incriminating he requested a bench conference.

The discussion at the bench establishes that the State obtained the information concerning defendant's insistence on using Ward's car during a taped interview of Ward. When interviewed, Ward told the State that defense counsel was aware of this particular detail in his account of the events. For that reason, when the State informed defense counsel about the interview by telephone, the prosecutor did not mention this detail as part of the new material obtained. Thereafter the State mailed defense counsel a complete transcript of the interview, but defense counsel did not receive it. At the conclusion of the bench conference, the trial justice adjourned for the day to allow defense counsel to consider his response. The following day defendant moved for a mistrial or, in the alternative, to strike the surprise testimony. The trial court denied the motions but prohibited any further questions concerning the tainted testimony and prohibited any further testimony regarding the contents of the Ward interview as well as the introduction of any other testimony by Ward.

Defendant contends that his failure to receive a transcript of the prosecutor's interview with David Ward, even though the State mailed one to him, violates the State's discovery burden under Rule 16(a)(1), Maine Rules of Criminal Procedure. Therefore, defendant argues, the trial justice abused his discretion by not ordering a mistrial or striking the evidence. Assuming that a discovery violation occurred, we conclude that the trial justice did not abuse his discretion in his choice of sanctions.

It is well established that "[w]hether to impose a sanction for violating the discovery rules rests within the discretion of the presiding justice." *State v. Reeves*, 499 A.2d 130, 133 (Me.1985). "The trial court has the authority not only to select a sanction, but also to decide whether any sanction is required." *State v. Davis*, 483 A.2d 740, 742 (Me.1984). Furthermore, the good faith of the State *is* relevant in determining an appropriate sanction for the discovery noncompliance. *State v. Landry*, 459 A.2d 175 (Me.1983). Where a trial court's consideration of a discovery violation is not complicated by questions about a prosecutor's good faith, "the trial court's concern must be primarily to protect the defendant from any unfair prejudice." *State v. Mylon*, 462 A.2d 1184, 1186 (Me.1983):

> To establish an abuse of discretion under Rule 16(d) ..., an appellant must show that he was in fact prejudiced by the discovery violation despite the court's effort to nullify or minimize its consequences, and that the prejudice rose to the level of depriving him of a fair trial.

*Reeves*, 499 A.2d at 133 (citations omitted).

In the case at bar, defendant has failed to show that the trial justice's remedy resulted in such prejudice that he was deprived of a fair trial. There was no deliberate misbehavior on the part of the State, and the evidence was not crucial evidence of defendant's guilt but was merely cumu-

lative evidence.[1] Therefore, we find no abuse of discretion.

Finally, we reject defendant's contention that Count II of the indictment was so ambiguous that it did not adequately inform defendant of the nature of the allegations against him. M.R.Crim.P. 7(c) mandates that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

 An indictment has three constitutionally based functions:

> (1) to provide the defendant with adequate notice of the charged offense so he may prepare to defend against it; (2) to avoid unfair surprise to the defendant at trial; (3) to protect the defendant from twice being placed in jeopardy for the same offense.

*State v. Levasseur*, 538 A.2d 764, 766 (Me. 1988).

> An indictment is considered sufficient if:
>
> a respondent of reasonable and normal intelligence, would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise.

*State v. Weymouth*, 496 A.2d 1053, 1057 (Me.1985) (quoting *State v. Crocker*, 435 A.2d 58, 68 (Me.1981)). Count II in the case at bar contains all of the elements of the crime of conspiracy as set out by 17–A M.R.S.A. § 151 (1983). "[A]n indictment's sufficiency should be assessed on the basis of 'practical rather than technical considerations' '[and] ... [p]roper grammatical construction ... is not always indispensable.' " *State v. Allison*, 427 A.2d 471, 473 (Me. 1981) (quoting H. Glassman, *Maine Practice, Rules of Criminal Procedure* § 7.11 (1967)). Accordingly, the indictment in the case at bar, even though grammatically incorrect, adequately informs the defen-

dant of the nature of the charge against him.

The entry is: Judgment affirmed.

All concurring.

---

1. The case at bar is clearly distinguishable from *State v. Thurlow*, 414 A.2d 1241 (Me.1980) upon which defendant relies. In *Thurlow*, the Law Court granted a mistrial because the State failed to disclose crucial exculpatory evidence after representing that full disclosure had been made.