STATE of Maine

v.

Anthony SANBORN, Jr.

Supreme Judicial Court of Maine.

Argued May 11, 1994.

Decided July 12, 1994.

Michael E. Carpenter, Atty. Gen., Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for State.

Michael E. Saucier (orally), Thompson & Bowie, Portland, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Anthony Sanborn, Jr., appeals from a judgment entered in the Superior Court (Cumberland County, *Perkins, A.R.J.*) following a jury verdict finding him guilty of murder. 17–A M.R.S.A. § 201(1)(A) (1983). Sanborn argues that the Juvenile Court (Portland, *Bradley, J.*) erred in waiving its jurisdiction and holding him to answer in the Superior Court; that the Superior Court (*Brodrick, J.*) erred in denying his motions to dismiss the indictment as a sanction for a discovery violation; and that the State engaged in prosecutorial misconduct by intimidating a potential witness into invoking the privilege against self-incrimination. Finding no error or abuse of discretion, we affirm.

On May 24, 1989, the body of Jessica Briggs (the victim) was pulled from the Portland Harbor. She was killed sometime in the late evening of May 23rd or early morning of May 24th, 1989. A juvenile petition was filed alleging that Sanborn had committed the

murder.[1] After a hearing before the Juvenile Court, Sanborn was bound over to the Superior Court to be tried as an adult. Sanborn appealed the bind-over order to the Superior Court (*Fritzsche, J.*) which affirmed. Following an unsuccessful attempt to dismiss the indictment for a discovery violation, Sanborn was tried before a jury in the Superior Court and was found guilty of murder. Sanborn filed a timely appeal.

## I. The Juvenile Court's Waiving of Jurisdiction.

The Juvenile Court found probable cause to believe that Sanborn murdered the victim and that it was appropriate to prosecute him as if he were an adult. Sanborn, relying on 15 M.R.S.A. § 3101(4) (1980 & Supp.1993),[2] raises a two-part argument that the Juvenile Court erred in holding him to answer in the Superior Court. First, he argues that the evidence was insufficient to support the finding of probable cause. Second, he claims that the evidence does not support the finding that it was appropriate to prosecute him as if he were an adult.

### a. Probable Cause

■ At the bind-over hearing, Gerard Rossi, an acquaintance of Sanborn's, testified that, on three occasions, Sanborn confessed to murdering the victim and that Sanborn warned him against telling anyone. Sanborn's father testified that, although Sanborn did not stay at the family apartment regularly, he did sleep at the apartment every night from May 21st until the morning of May 25th, 1989. On May 23, 1989, the day of the murder, Sanborn was said to have come home about 8:30 p.m., gone to bed and woke at about 9:30 a.m. on May 24th. The father admitted that he did not check on Sanborn during the night, that the room in which Sanborn slept was on the third floor without access to a ladder or balcony, and that Sanborn had no key to the apartment. However, he acknowledged that it would be possible for a person to let himself out of the apartment and leave the door unlocked so as to be able to reenter the apartment without a key. After hearing this testimony, the Juvenile Court found probable cause to believe that Sanborn murdered the victim.

"We review bind-over orders only on 'an appeal of a judgment of conviction in Superior Court following bind-over.'" *State v. Thompson,* 603 A.2d 479, 480 (Me.1992) (citing 15 M.R.S.A. § 3407(2)(B) (1980)). Sanborn argues that a showing of probable cause is not a *pro forma* step and that the evidence

1. Sanborn was born on July 8, 1972. Thus, he was 16 years old when the murder took place; 17 when charged in the Juvenile Court; 18 when bound over to the Superior Court; 19 when indicted by the grand jury; and 20 when found guilty of murder in the Superior Court.

2. 15 M.R.S.A. § 3101(4) provides, in pertinent part:

    A. When a petition alleges that a juvenile has committed an act which would be murder ... if committed by an adult, the court shall, upon request of the prosecuting attorney, continue the case for further investigation and for a bind-over hearing to determine whether the jurisdiction of the juvenile court over the juvenile should be waived....

    \* \* \* \* \* \*

    D. The Juvenile Court shall consider the following factors in deciding whether to bind a juvenile over to the Superior Court:
    (1) Seriousness of the crime: The nature and seriousness of the offense, greater weight being given to offenses against the person than against property; whether the offense was committed in an aggressive, violent, premeditated or willful manner;

    (2) Characteristics of the juvenile: The record and previous history of the juvenile; his emotional attitude and pattern of living; and
    (3) Dispositional alternatives: Whether future criminal conduct by the juvenile will be deterred by the dispositional alternatives available to the Juvenile Court; whether the dispositional alternatives available to the Juvenile Court would diminish the gravity of the offense; and whether the protection of the community requires commitment of the juvenile to a facility which is more secure than those available as dispositional alternatives to the Juvenile Court.

    E. The Juvenile Court shall bind a juvenile over to the Superior Court if it finds: (1) That there is probable cause to believe that a juvenile crime has been committed that would constitute murder ... if the juvenile involved were an adult and that the juvenile to be bound over committed it; and (2) By a preponderance of the evidence that, after a consideration of the seriousness of the crime, the characteristics of the juvenile and the dispositional alternatives available to the Juvenile Court, as specified in paragraph D, it is appropriate to prosecute the juvenile as if he were an adult.

before the Juvenile Court was insufficient to lead a person of ordinary caution to believe or suspect that he murdered the victim. We reject Sanborn's various arguments regarding Rossi's credibility. After reviewing the record, we conclude that the Juvenile Court's finding of probable cause was not clearly erroneous.

### b. Appropriateness of Prosecution as an Adult

■ During the second portion of the bifurcated bind-over hearing, several witnesses testified for the State regarding Sanborn's history of placement at the Maine Youth Center, repeated escapes from the center, Sanborn's mental health generally, and his prospects for rehabilitation. In response, Sanborn offered testimony as to his participation (1) in substance abuse meetings, (2) in chapel services at the Maine Youth Center, and (3) in a Colorado program designed to treat youths with behavioral problems like Sanborn's.

The Juvenile Court found that it was appropriate to prosecute Sanborn as if he were an adult. Sanborn argues that the Juvenile Court abused its discretion. First, he argues that the Maine Juvenile Code must be applied and interpreted in light of its stated purpose of treatment and rehabilitation. 15 M.R.S.A. § 3002(1) (1980 & Supp.1993). Second, he argues that the evidence in the record is insufficient to support the Juvenile Court's determination that Sanborn was not receptive or amenable to treatment. In so arguing, he focuses on the three statutory factors that 15 M.R.S.A. § 3101(4)(D) requires a juvenile court to consider. In relation to the first factor—seriousness of the crime—Sanborn does not dispute that the offense charged is serious. He argues, however, that the seriousness of the offense, standing alone, is insufficient to justify the bind-over. In relation to the second factor—

the characteristics of the juvenile—Sanborn argues that the evidence does not support the court's finding that bind-over was appropriate. Regarding the third factor—the dispositional alternatives—Sanborn avers that a Colorado facility could offer appropriate treatment. Sanborn argues that the court misapplied the "gravity of the offense" portion of 15 M.R.S.A. § 3101(4)(D)(3) [3] when it expressed concern regarding the Colorado program's inability to confine Sanborn beyond his 21st birthday. He argues that the "'diminish the gravity of the offense' standard must be placed in the context of the purpose of the Juvenile Code, which is to focus on the juvenile's amenability to treatment, rather than his past bad acts."

■ 15 M.R.S.A. § 3101(4) does not, as Sanborn suggests, state that a juvenile who is amenable to treatment cannot be bound over to be tried as an adult. Instead, the statute provides a list of factors that must be considered by the Juvenile Court when deciding whether, by a preponderance of the evidence, it is appropriate to prosecute a juvenile as an adult. Contrary to Sanborn's interpretation, the statute does not dictate the weight to be given to the specific factors, nor does it provide that each factor must be affirmatively shown before it is appropriate to prosecute a juvenile as an adult. In an opinion that was both detailed and comprehensive, the Juvenile Court considered each of the required factors and accordingly made its finding. In its carefully written well-reasoned opinion, the Juvenile Court considered, at length, the seriousness of the crime and the characteristics of Sanborn (including his record and previous history, Sanborn's emotional attitude and pattern of living, and the dispositional alternatives). After such consideration, the Juvenile Court concluded:

> In view of this emotional attitude and pattern of living, in light of the lack of dispositional alternatives available to the Juvenile

**3.** Section 3101(4)(D)(3) provides:
D. The Juvenile Court shall consider the following factors in deciding whether to bind a juvenile over to the Superior Court:
\* \* \* \* \* \*
(3) Dispositional alternatives: Whether future criminal conduct by the juvenile will be deterred by the dispositional alternatives avail-

able to the Juvenile Court; *whether the dispositional alternatives available to the Juvenile Court would diminish the gravity of the offense;* and whether the protection of the community requires commitment of the juvenile to a facility which is more secure than those available as dispositional alternatives to the Juvenile Court. (Emphasis added).

Court that would adequately address both the demonstrated conduct of this individual and the gravity of the offense, and in view of the undisputed seriousness of the offense at issue here, the Court finds by a preponderance of the evidence that it is appropriate to prosecute Anthony Sanborn, Jr., as if he were an adult. *See* 15 M.R.S.A. § 3101(4)(E)(2).

We find no error nor abuse of discretion in the Juvenile Court's conclusion that it was appropriate to prosecute Sanborn as if he were an adult.

## II. Sanborn's motions to dismiss the indictment

■ Rossi testified, at the bind-over hearing, that Sanborn confessed to the murder. Unfortunately, a prior inconsistent statement, made during an interview with Florida police detectives, was not disclosed to Sanborn's attorney until more than one year after the bind-over hearing, six months after the grand jury indictment, and eight months before the trial. The Superior Court found that the late disclosure was due to a good faith mistake by Portland Police detectives who were unaware of the existence in their files of the inconsistent statement made by Rossi to Florida detectives. Once the State became aware of the statement, it was turned over to Sanborn's attorney. After receiving the transcript, Sanborn filed a motion to dismiss the indictment for grand jury error and bind-over error, and a motion for sanctions. Although the trial court found a discovery violation, it denied Sanborn's motions.

Sanborn argues that the trial court erred in concluding that the discovery violation did not deny him his rights, under the Maine and United States constitutions, to due process of law, effective assistance of counsel, and the right to confront witnesses. Although the State argues that no technical violation of M.R.Crim.P. 16 occurred,[4] it concedes that the spirit of the rule was violated. Assuming a discovery violation, the State then argues that the trial court had broad discretion under M.R.Crim.P. 16(d) to choose an appropriate sanction and that, in this case, the trial court did not abuse its discretion in choosing not to levy a sanction. Additionally, the State argues that Sanborn was not prejudiced since he had the transcript eight months before trial and was able to and did cross-examine Rossi with the statement at trial.

■ M.R.Crim.P. 16(a) and (d) provide for automatic discovery and the sanctions available for violations of such discovery.[5] Rule 16(a) requires a diligent inquiry by prosecutors to discover whether automatically discoverable information exists. The failure to comply with Rule 16(a) may result in the trial court's excluding the specified evidence. Unless a defendant has demonstrated that he was in fact prejudiced by the discovery violation despite the court's effort to nullify or minimize the consequences and that the prejudice rose to the level of depriving him of a fair trial, a trial court's decision not to impose sanctions for discovery violations cannot be characterized as either an abuse of discretion or an error of law. *State v. Leavitt,* 625

---

4. The State argues that, technically, there was no violation of the plain language of M.R.Crim.P. 16. It claims that it had a duty to disclose only *known* information or information that it should have known given its duty to make a diligent inquiry of agencies reporting to it. In this case, it claims that there is no evidence showing that the prosecutor knew of the information or failed to make a diligent inquiry. The State also argues that this information was not required to be disclosed because it did not tend to create a reasonable doubt about Sanborn's guilt.

5. M.R.Crim.P. 16(a)(1)(C) provides:

The attorney for the state shall furnish to the defendant within a reasonable time ... [a] statement describing any matter or information known to the attorney for the state which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the offense charged.
M.R.Crim.P. 16(d) provides:

If the attorney for the state fails to comply with this rule, the court on motion of the defendant or on its own motion may take appropriate action, which may include, but is not limited to, one or more of the following: requiring the attorney for the state to comply; granting the defendant additional time or a continuance, relieving the defendant from making a disclosure required by Rule 16A, prohibiting the attorney for the state from introducing specified evidence and dismissing charges with prejudice.

A.2d 302, 305 (Me.1993); *State v. Corson,* 572 A.2d 483, 486 (Me.1990). Assuming, without deciding, that a violation of M.R.Crim.P. 16(a)(1)(C) occurred, we find that the trial court did not abuse its discretion in failing to impose a sanction. On the record before us, we find that Sanborn was neither prejudiced nor denied of a fair trial.

### III. Intimidation of a Potential Witness

Finally, Sanborn argues that the State, through threats of prosecution, intimidated a potential witness into invoking her privilege against self-incrimination and thus denied Sanborn of his sixth amendment right to compulsory process. Sanborn neither called the potential witness to testify nor sought immunity on her behalf. We review for obvious error and find none.

The entry is:

Judgment affirmed.

All concurring.