STATE *v.* BRAGGS.

[Cite as State v. Braggs, 9 Ohio Misc. 32.]

(No. 220923—Decided November 1, 1966.)

Juvenile Court of Cuyahoga County.

*Mr. John T. Corrigan,* county prosecutor, and *Mr. Albin Lipold,* for state.
*Mrs. Carol G. Emerling,* for defendant.

WHITLATCH, J. This cause now comes before the court upon the application of the defendant, David Braggs, to suspend sentence. David Braggs originally appeared before this court on March 1, 1965, charged with contributing to the delinquency of a seventeen year old boy in that he did engage in unnatural sexual activity with the boy.

Upon the defendant's plea of guilty, the charge being a "misdemeanor involving a sex offense, or in which abnormal sexual tendencies are displayed" and it appearing to the court that the defendant was a "psychopathic offender," the court, pursuant to the provisions of Section 2947.25, Revised Code, committed the defendant to the Lima State Hospital for psychiatric examination. The conclusion of the Lima State Hospital psychiatrist was that the defendant was a "psychopath" * * * "positive to the Ascherman Act and committable." Other findings of the psychiatrist and the psychologist of the Lima State Hospital were as follows: "sexual preocupation and a

hostile and aggressive sexual attitude" * * * "a hostile individual who doesn't show any insight and whose judgment is defective" * * * "there is strong evidence of lability, hostility and aggression and of sexual deviation and promiscuity." * * * "Although not psychotic, the patient's lability and hostility would be a threat to society * * * the patient is a good candidate for a future psychotic state."

The court, upon consideration of this report, found the defendant to be a psychopathic offender as defined in Section 2947.24, Revised Code. Thereupon, in conformity with Section 2947.25, Revised Code, the court sentenced the defendant to one year in the House of Correction. At the same time the court ordered the indefinite commitment of the defendant to Lima State Hospital and further ordered that the defendant's sentence to the House of Correction be suspended during the continuance of the commitment to the Lima State Hospital.

Under date of April 18, 1966, the court received a letter from the Superintendent of Lima State Hospital stating that the defendant was transferred to the Cleveland House of Correction to continue his sentence. As to the reason for the defendant's transfer to the House of Correction the report which accompanied the letter stated as follows:

"The patient has received the maximum medical facilities which are available and he does not have any further motivation for treatment from our hospital and *his condition can be called unchanged* and at the present time we are unable to offer him any more from our psychiatric facilities." (Emphasis ours.)

We questioned the hospital's authority to transfer the defendant to the House of Correction for their stated reasons but the hospital insisted that they had the authority to do so and refused to readmit the defendant. The court thereupon ordered the sentence to the Cleveland House of Correction into effect.

With this background we now consider the application of defendant's counsel to suspend sentence.

It is the contention of counsel that since the aggregate time that the defendant has spent in Lima State Hospital and the House of Correction more than exceeds the one year to which the defendant was sentenced that he should now, pursuant to

Section 2947.27, Revised Code, be released. This section provides as follows:

"Whenever a person committed under Section 2947.25, Revised Code, has recovered, or his condition appears to have improved to such an extent that he no longer needs the special custody, care, or treatment of such institution, the superintendent of the institution shall report the facts to the commissioner of mental hygiene, who may order further examination of such person. If such person has recovered or is sufficiently improved to justify such action, the director of mental hygiene and correction upon the written recommendation of the commissioner, shall issue one of the following orders:

"(A) If the person has been confined for a period less than the maximum sentence for the offense of which he was convicted, the order shall terminate the indefinite commitment. Thereupon the sentence which was suspended under such section shall forthwith go into effect and the person shall be transferred to the appropriate penal or reformatory institution. Thereafter he is subject to the jurisdiction of the court or the pardon and parole commission. For the purposes of reckoning the eligibility of such person for parole or discharge, the time of confinement under an order of indefinite commitment in accordance with such section, shall be counted as time served with good behavior under the applicable sentence.

"(B) If such person has been confined for a period equaling or exceeding the maximum sentence for the offense of which he was convicted, the order shall provide that the person be placed on trial visit under supervision. If, after a suitable period of supervision on trial visit, the director, upon the written recommendation of the commissioner, is satisfied that the person no longer requires supervision, the indefinite commitment and the sentence suspended under such section shall be determined and the person shall be discharged from the legal control and custody of the department of mental hygiene and correction."

Clearly this section has application only when the conditions set forth in the first paragraph of the section obtain, that is when the person so committed "has recovered or his condition appears to have improved to such an extent that he no

longer needs the special custody, care or treatment of such institution, * * *.''

This defendant has not recovered nor has his condition improved to the extent that he no longer needs the special custody, care or treatment of the Lima State Hospital. On the contrary, the report of the Lima State Hospital of March 23, 1966, states that the defendant's "condition can be called unchanged.'' Therefore, the defendant's condition is as was reported in the hospital's report of April 1, 1965, that is he is a ''psychopath'' * * * ''positive to the Ascherman Act and committable.'' Further again quoting from the original report ''the patient's lability and hostility could be a *threat to society.*'' Since the defendant has neither recovered nor has his condition improved to the extent that he no longer needs the special custody, care and treatment of the hospital the provisions of Section 2947.27, Revised Code, relative to credit on his sentence for time spent in the hospital have no application. (Emphasis ours.)

It is this court's opinion that the intent and purpose of the Ascherman Act is to provide for the indefinite confinement of psychopathic sex deviates who may be dangerous to society until such time as the medical authorities can say that such an offender is no longer a danger to society. We believe this opinion is shared by the general public. Indeed the purpose of the act is clearly stated in Section 2947.24, Revised Code, as follows:

''Sections 2947.24 to 2947.29, inclusive, Revised Code, shall be administered by the criminal courts in dealing with mentally deficient offenders and psychopathic offenders in cases in which the court finds that the imposition or continued enforcement of the applicable penal sentence will not afford to the public proper protection against possible future criminal conduct of such mentally deficient or psychopathic offenders.''

From our reading on the subject and discussions with able psychiatrists we are aware that there are sexual deviates and psychopaths who do not favorably respond to psychiatric care and treatment. If those who cannot be helped are to be released upon society, then the Ascherman Act is not giving society the protection it was meant to provide and instead is simply a device

to lull the public into a false feeling of security in respect to sex deviates and psychopaths. It well may be that, like so many of our state institutions, Lime State Hospital is badly overcrowded but if this is so, the answer is to provide additional facilities to take care of these persons who are a menace to society and themselves rather than to let them loose to prey upon society.

Contrary to its purpose as expressed in Section 2947.24, Revised Code (quoted above), the Ascherman Act, in this instance, did not "afford to the public proper protection against possible future criminal conduct" of this psychopathic offender. If the defendant is to be released before the expiration of his sentence, it will not be this court who will release him.

Application for suspension of sentence is denied.