STATE of Maine

v.

David G. FLEMMING.

Supreme Judicial Court of Maine.

Dec. 20, 1979.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Paine & Lynch by Martha J. Harris (orally), Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

ARCHIBALD, Justice.

David G. Flemming had been indicted in Aroostook County on two charges of murder and had pleaded not guilty and not guilty by reason of mental disease to both charges. After a full trial before a single justice of the Superior Court, a verdict and judgment were entered acquitting Flemming of the two charges "by reason of mental disease excluding responsibility." 15 M.R.S.A. § 103. On May 2, 1974, acting pursuant to Section 103, the single justice then ordered Flemming committed to the Commissioner of Mental Health and Corrections for placement "in an appropriate institution for the mentally ill." The Commissioner placed Flemming in the Bangor Mental Health Institute (BMHI).

Aided by a female employee of BMHI, Flemming escaped from that institution on or about June 17, 1976. Ultimately he was apprehended, returned to the State of Maine and, pursuant to 17–A M.R.S.A. § 755, was tried on an indictment charging escape.

Rejecting the plea of not guilty by reason of insanity, the jury returned a verdict of guilty. A Superior Court Justice then sentenced Flemming to serve five years in the Maine State Prison "to be served when the defendant is discharged from Bangor Mental Health Institute or any mental institute." The court then issued the following directive:

> Said Sheriff is hereby ORDERED to deliver the Defendant to the Commissioner of Mental Health and Corrections or his agent at the Bangor Mental Health Institute FORTHWITH and the sentence herein ORDERED is to commence and to be served upon the Defendant's discharge from the Bangor Mental Health Institute or any other mental institution.

Flemming seasonably appealed from this judgment. We deny the appeal.

I

■ After a hearing in limine, a justice of the Superior Court ruled that proposed evidence of duress to be offered in justification of the escape would not be admitted at the trial.

In his offer of proof Flemming represented that evidence could be introduced to indicate that he had been abused, harassed and threatened at BMHI to the point he might have been driven to commit a homicide himself or to have been the victim of one. It was to avoid these potentialities, he argues, that he escaped. We believe our holding in *State v. Dyer*, Me., 371 A.2d 1086, 1090–91 (1977), is dispositive of this contention.

When the legislature enacted 17–A M.R.S.A. § 755(2),[1] it discouraged self-help when a prisoner deemed his confinement to be illegal. Paraphrasing what we said in *Dyer, id.* at 1090, "[s]ince [Flemming] was under lawful confinement, he had no legal

---

1. In the case of escape from arrest, it is a defense that the arresting officer acted unlawfully in making the arrest. *In all other cases*, it is no defense that grounds existed for release from custody that could have been raised in a legal proceeding.
17–A M.R.S.A. § 755(2) (emphasis supplied).

right to resort to self-help as a method to assert his claim with respect to conditions in [BMHI]."

## II

■ The justice instructed the jury that Flemming had the burden of proving the truth of his insanity defense by a fair preponderance of the evidence. Flemming limited his objection to this instruction to constitutional grounds.

In the recent case of *State v. Burnham,* Me., 406 A.2d 889, 892 (1979), we dealt with an identical issue by holding that "any question which may have existed has long since been resolved adversely to the position taken by the defendant."

■ Although Flemming also argues that the insanity instructions were confusing, he first raises that issue on appeal. Under such circumstances and because we do not feel the instructions rise to the level of manifest error, we will not consider the point on appeal. *See Chenard v. Marcel Motors*, Me., 387 A.2d 596, 603 (1978).

## III

Flemming moved for a mistrial or, alternatively, for a continuance because he claimed the State failed to disclose potentially exculpatory material. As we read the offer of proof, apparently the Bangor Police Department had in its files an investigation concerning an alleged suicide by a patient at BMHI. The prosecutor denied that he had any knowledge of this report or that it had any connection with this particular case. As best we can deduce from reading the record, defense counsel wanted this report to facilitate the cross-examination of the Superintendent of BMHI. It is also apparent from the offer of proof that this report was compiled by a police officer, but not in connection with the Flemming case.

■ In effect at the time of trial was our automatic discovery rule, M.R.Crim.P. 16(a).

2. We do not suggest that a prosecuting attorney is under *no* obligation to disclose exculpatory information in police files relating to the particular case in controversy, even though he

Defense counsel made his motion because the District Attorney had not disclosed this report. If failure to disclose was premised on Rule 16(a), the defendant's contention is without merit. The report was unrelated to Flemming and was not in the prosecutor's file to which defense counsel admits he was given full access. Furthermore, it is unquestioned that the prosecuting attorney was unaware of this report.[2] It is clear that there was no violation of Rule 16(a). *State v. Morton*, Me., 397 A.2d 171, 176 (1979).

■ If, however, the motion was based on a breach of duty by the attorney for the State under M.R.Crim.P. 16(b), the denial of the motion was likewise correct. A discovery under Rule 16(b) is premised on the fact that the documents are within the possession or control of the attorney for the State and must be in such possession with reference to a particular case. The fact that documents may have been in existence in the files of a police department involving an incident on its face unrelated to the case in trial does not make such documents discoverable, at least to the extent of requiring the District Attorney's office to disclose them in this case. Furthermore, in the record before us, we have no evidence that the defense counsel ever made any "written request" on the prosecuting attorney to produce such documents, such request being a prerequisite to discovery pursuant to Rule 16(b)(1). We cannot proceed to determine an issue urged on appeal but which is unsupported by anything in the record before us. *State v. Colomy and Fisher*, Me., 407 A.2d 1115 (1979).

## IV

■ Flemming was aided in his escape by a female employee of BMHI who had prearranged transportation and living accommodations. This person testified, and the following is a segment of her cross-examination by defense counsel:

may not be specifically aware of such information. We conceive the rule to require a diligent inquiry of police agencies by a prosecutor as to whether such information does exist.

Q Miss . . ., do you have any children?

A Yes, I do.

Q How many?

A One.

Q And who is the father of that—

MR. [PROSECUTOR]: Objection, totally irrelevant.

THE COURT: Sustained.

Flemming's counsel argued that if Flemming was the father of this witness's child, it "would be a factor in considering her prejudice for or against the defendant." We view the ruling of the justice in excluding this testimony as a proper exercise of his discretion, particularly in view of the doubtful relevancy of the evidence. *State v. Gagne*, Me., 349 A.2d 193, 200 (1975). Since the offer of proof was purely speculative, the court could also have excluded this testimony to protect the witness from "harassment or undue embarrassment." M.R.Evid. 611(a).

## V

■ Defense counsel sought to examine a lay patient-advocate at BMHI as to his opinion concerning the "treatment of Mr. Flemming." The breadth of the question suggests that the witness was being asked to express an expert opinion and, therefore, since no offer of proof was made supporting its admissibility, was properly excluded. *Banville v. Huckins*, Me., 407 A.2d 294 (1979).

## VI

Flemming's last contention on appeal is that his sentence was illegal because its execution was deferred until such time in the uncertain future when he would be discharged from a mental institution.

■ Since Flemming is contending that his sentence was illegal, and since that issue is one of law which can be decided on the record before us, there is no bar to our consideration of that issue because it is raised in the context of a direct appeal rather than in the context of post-conviction habeas corpus. *State v. Capitan*, Me.,

363 A.2d 221, 224–25 (1976); *Dow v. State*, Me., 275 A.2d 815 (1971).

Escape is a Class C crime which may be punished by a sentence not to exceed five years. 17–A M.R.S.A. § 1252(2)(C). Facially, the five-year sentence imposed, although the maximum, was within the statutory limits.

We understand Flemming to be arguing that the illegality arises not from the sentence itself but from the delay in its execution.

At the outset we think it obvious that if Flemming had been convicted originally of the murders, sentenced accordingly, and subsequently escaped from the Maine State Prison, a consecutive sentence would have been mandated. 17–A M.R.S.A. § 1155(1). Flemming, however, argues that the very act of suspending a sentence to an uncertain future date is illegal, although he cites no specific authority for that proposition, nor does he advance any rationale to support it. We note, of course, the inherent power of the court to stay execution of a sentence under a variety of circumstances. In *United States v. Liddy*, 166 U.S.App.D.C. 289, 510 F.2d 669 (D.C. Cir. 1974), *cert. denied*, 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975), the defendant was convicted of burglary and given an extensive prison sentence. Subsequently, Liddy was subpoenaed to testify in a criminal matter and, although granted immunity, refused to testify. He was then found in contempt and ordered imprisoned, thus suspending the execution of the burglary sentence while serving the sentence for contempt. The District of Columbia Court of Appeals upheld that action, noting that the procedure adopted was the only effective way to enforce the contempt citation. *Id.*, 166 U.S. App.D.C. at 295, 510 F.2d at 675. *Accord, United States v. Dien*, 598 F.2d 743, 744 (2d Cir. 1979), and cases cited therein at 745 n.1.

■ In the case before us, however, it is not clear that consecutive sentences were imposed. 17–A M.R.S.A. § 755 does make an escape from a mental institution a criminal act. *Cf. State v. Beauchene*, Me., 382

A.2d 329 (1978) (construing 17 M.R.S.A. § 1405, repealed by P.L.1975, ch. 499, § 7, effective May 1, 1976). Nonetheless, we consider the sentence imposed by the justice below as falling within the inherent power of the court to enforce its valid and outstanding orders.

■ When Flemming was found not guilty by reason of insanity for the murder charges, he was committed to the Commissioner of Mental Health and Corrections because 15 M.R.S.A. § 103 required that specific disposition. 15 M.R.S.A. § 104 authorizes release following a mandated commitment under Section 103 only after a hearing in the Superior Court and an appropriate order therefrom. Flemming did not see fit to use this approach. Since petitioning under Section 104 is the only method for obtaining a valid release from a commitment to the Commissioner of Mental Health and Corrections under Section 103, the Bureau of Mental Health and Corrections never lost its right, indeed its obligation, to hold Flemming despite his escape from BMHI and his subsequent escape conviction. The Legislature conceived that public safety required a formalized procedure before a person found not guilty by reason of mental disease or defect could be discharged from a mental institution. We recognized this concern in *State v. Shackford*, Me., 262 A.2d 359, 366 (1970), when we stated:

> Inherent in the finding by the jury that the then defendant was not guilty by reason of mental disease or defect, is the conclusion that he did the acts complained of, i. e., he killed Marsha Hanscom and the killing was the product of his mental disease. By so finding the jury put Shackford in what some Courts have called an exceptional class. He became one who is to be held blameless and free from punishment for an act otherwise subject to criminal sanctions.
>
> The Legislature determined that when one enters into this exceptional class, the reasonable and humane thing to do is commit him to a mental hospital where he can undergo medical treatment which will, hopefully, enable him to return to

society as a useful member, posing no threat to his own safety or that of the general public. *The public acquired a special interest in his confinement and release. That public interest must be protected by the Court.* When consideration is being given to his enlargement, that public interest must be weighed against his claimed right to be set free. (footnote omitted) (emphasis supplied).

■ When the Legislature deemed it appropriate to criminalize escaping from a mental institution, the offense was thus brought within the Maine Criminal Code. By analogy to consecutive sentencing, therefore, it is not inconsistent to defer the execution of a criminal sentence until a discharge from a mental institution. It is true that a commitment pursuant to Section 103 does not have a definitive terminal date. Such an authorized commitment, however, is not deemed to be a punishment and therefore is not restricted by the prohibition against indeterminate sentences found in 17–A M.R.S.A. § 1252(1).

We also conceive that the sentence imposed in this particular case may have a beneficial impact. It permits Flemming, or one similarly situated, to continue treatment for his mental disease or defect *prior* to serving his specific sentence for criminal conduct. Other jurisdictions under similar circumstances have approved this rationale. *See,* for example, *Talley v. Beavers,* 141 Ga. 110, 80 S.E. 556 (1913); *Mitts v. State,* 345 P.2d 913 (Okl.Cr.App.1959); *State v. Braggs,* 9 Ohio Misc. 32, 221 N.E.2d 493 (Ohio Juv.1966). *See also Novosel v. Helgemoe,* 384 A.2d 124, 131 (N.H.1978).

Punishment for escape should not be ignored simply because a person happens to be in a mental institution. In enacting the Maine Criminal Code, the Legislature determined that criminal penalties should flow from an escape of this nature. Therefore, we deem it entirely rational that a presiding justice, faced with the dilemma created when an inmate escapes from a mental institution, should have the authority to suspend the imposition of criminal penalties until such time as the mental disease or

defect has been treated. Imposing the sentence in the manner in which the presiding justice did in this case also eliminates any doubt that might arise if Flemming had been immediately committed to the Maine State Prison, since he might subsequently argue that such immediate commitment superseded the original order committing him to the Commissioner of Mental Health and Corrections.

In summary, we hold that the sentencing procedure was legal.

The entry is:

Appeal denied.

Judgment affirmed.